**Andrew Huntley PAXTON, Plaintiff,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, et al., Defendants.**

**Civ. A. No. 90–CV–72436.**

United States District Court,
E.D. Michigan, S.D.

Sept. 20, 1990.

Marshal E. Hyman, Birmingham, Mich., for plaintiff.

Steven Markman, U.S. Atty., L. Michael Wicks, Asst. U.S. Atty., Detroit, Mich., for defendants.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

On June 29, 1990, the Plaintiff, Andrew Huntley Paxton[1], entered a plea of guilty for possession with intent to deliver approximately one pound of marijuana in a state court in violation of Mich.Comp.Laws § 333.7401(2)(c) (1980)[2]. Thereafter, he

---

1. Paxton is a Canadian citizen who was born on May 6, 1969 in Windsor, Ontario, while his mother, a United States permanent resident, was visiting her parents in Canada. Four days later, his mother brought him to the United States where he has lived continuously as a permanent resident alien.

2. Mich.Comp.Laws Ann. § 333.7401(1) (West 1980), reads "... a person shall not manufacture, deliver or possess with intent to manufacture or deliver, a controlled substance." Mich.Comp.Law § 333.7401(2)(c) provides that "[a] person who violates this section as to ... mari-

was sentenced to serve 90 days in the Macomb County (Michigan) Jail, followed by a two year probation period.

Because of Paxton's Canadian birth, the Immigration and Naturalization Service (INS) classified him as an alien and concluded that this conviction rendered him deportable pursuant to Section 241(a)(4), (b) and (a)(11) of the Immigration and Naturalization Act, 8 U.S.C. § 1251(a)(4), (b) and (a)(11).[3]

On August 16, 1990, immediately prior to his release from custody, Paxton was informed that (1) an immigration detainer had been filed against him and (2) he would be held in custody by the INS without bond[4], pursuant to Section 242(a)(2) of the Immigration and Naturalization Act, 8 U.S.C. § 1252(a)(2) (1988), which provides that

> [t]he Attorney General shall take into custody any alien convicted of an aggravated felony upon completion of the alien's sentence for such conviction.... the Attorney General shall not release such felon from custody.

On September 13, 1990, Paxton initiated an action in this Court, in which he asked this Court, *inter alia*, to (1) declare that 8 U.S.C. § 1252(a)(2) (1988) is unconstitutional under the Fifth and Eighth Amendments of the United States Constitution and (2) enjoin its enforcement by the Defendants[5], all of whom oppose his requested relief. Shortly thereafter, the parties submitted briefs on the issues in controversy and presented oral arguments to this Court.

In support of his application for injunctive relief, Paxton offers three alternative positions, any one of which—in his judg-

ment—should be adopted by this Court: (1) § 1252(a)(2) is inapplicable to him because he was convicted of a state crime—not a federal offense; (2) the statute, even if constitutional, cannot be applied to him until he completes his sentence, including the prescribed probationary period; and (3) in holding him without a bail hearing, his Fifth and Eighth Amendment rights have been violated.

## I.

Under § 1252(a)(2), an aggravated felony includes "murder, any drug trafficking crime as defined in 18 U.S.C. § 924(c)(2), or any illicit trafficking in any firearms or destructive devices as defined in 18 U.S.C. § 921, or any attempt or conspiracy to commit any such act, committed with the United States." 8 U.S.C. § 1101(a)(43) (1988). Drug trafficking is defined as "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.), the Controlled Substance Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C.App. 1901 et seq.)." 18 U.S.C. § 924(c)(2) (1988).

Paxton argues since his conviction was based upon state law rather than any of the federal laws that have been enumerated in section 924(c)(2), § 1252(a)(2) does not apply to him. This Court disagrees. The Anti–Drug Abuse Act of 1988, Pub.Law 100–690, 102 Stat. 4181, which amended the Immigration and Naturalization Act to include section 242(a)(2), 8 U.S.C. § 1252(a)(2), also amended the language of section 924(c)(2). Prior to the enactment of this statute, a drug trafficking crime was defined as "any felony violation of Federal

---

huana, is guilty of a felony, punishable by imprisonment for not more than 4 years,...."

**3.** 8 U.S.C. § 1251(a) states in pertinent part that, "[a]ny alien in the United States ... shall, ... be deported who—

> (4)(b) is convicted of an aggravated felony at any time after entry;
> (11) ... at any time has been convicted of a violation of, or conspiracy to violate, any law or regulation of a State, the United States or a foreign country relating to a controlled substance...."

(1988)

**4.** Shortly thereafter, a United States Immigration Judge held that Paxton was not entitled to a bond redetermination hearing.

**5.** The Defendants are the United States Immigration and Naturalization Service, and several individuals: (a) Richard Thornburgh, the United States Attorney General, (b) Eugene P. McNary, the Commissioner of the Immigration and Naturalization Service, and (c) James H. Montgomery, the District Director of the Immigration and Naturalization Service.

law involving distribution, manufacture, or importation of any controlled substance...." 18 U.S.C. § 924(c)(2) (amended 1988).

This Court does not believe that Congress would change only one sentence in the language of section 924(c)(2) without a definitive purpose in mind. The undeniable explanation for the change was to prevent the dichotomy which Paxton suggests. It seems clear that the change in the language of section 924(c)(2) from "any violation of federal law" to the current language of "crimes punishable under" federal law was intended to encompass all comparable criminal activity that would be prosecuted under state law. Immigration boards and other courts have reached similar conclusions. *See, Leader v. Blackman,* 744 F.Supp. 500 (S.D.N.Y.1990); *Matter of Barrett,* Int.Dec. 3131, (B.I.A. March 2, 1990).

◼ Paxton also challenges the timing of his detention by the Defendants. He asserts that § 1252(a)(2) does not come into effect until a felon has fully served his sentence. In support of this claim, Paxton notes that he has two years of probation remaining on his sentence. This, he believes, is evidence that his current detention is premature. In response, the Defendants assert that Congress intended for the word "sentence" within § 1252(a)(2) to refer to the felon's actual incarceration. In support of their contention, they point to *In re Brian Clifford Eden,* Int.Dec. 3137 (B.I.A. June 14, 1990), in which the Board of Immigration Appeals (BIA), following an exhaustive look at the common usage of the word and the legislative history of the Anti–Drug Abuse Act of 1988, concluded that the word "sentence" refers to the period of actual confinement which has been ordered by the court.

The word "sentence" is not defined within the Immigration and Naturalization Act. As such, this Court must look to the INS for a permissible construction of the statute. *Chevron U.S.A. Inc. v. Natural Re-*sources *Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). This Court finds that the interpretation by the BIA in *Eden* is reasonable and, thus, will adopt the reasoning which has been outlined in that decision. *See, Perlera–Escobar v. Executive Office for Immigration Review,* 894 F.2d 1292 (11th Cir.1990) (per curiam); *Campos–Guardado v. INS,* 809 F.2d 285 (5th Cir.1987). Accordingly, this Court must reject Paxton's construction of the statute.

### II.

◼ Paxton contends, *inter alia,* that his substantive and procedural due process rights have been violated under the Fifth Amendment as well as his right not to incur excessive bail as prohibited by the Eighth Amendment. This allegation is opposed by the Defendants who assert that a review of Paxton's claim by this Court is limited to determining whether the immigration statute is based upon a "facially legitimate and bona fide reason." *Fiallo v. Bell,* 430 U.S. 787, 794, 97 S.Ct. 1473, 1479, 52 L.Ed.2d 50 (1977), quoting *Kleindienst v. Mandel,* 408 U.S. 753, 770, 92 S.Ct. 2576, 2585, 33 L.Ed.2d 683 (1972). They maintain that once a facially legitimate and bona fide reason has been found this Court should neither look behind the exercise of legislative discretion nor test the law by balancing its justification against the constitutional interest of those challenging it. *Id.* at 794–795, 97 S.Ct. at 1479–80.

This Court is mindful of the *Fiallo* standard of review and the plenary power of Congress over the entry and termination rights of aliens. *Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952). However, the issue which has been presented to this Court is the denial of an opportunity to determine the appropriateness of detention. Therefore, the Court is not persuaded by the Defendants' argument and chooses not to apply the *Fiallo* standard of review in this matter.[6]

---

6. The Court recognizes that some district courts have applied the deferential standard of review, *see, Eden v. Thornburgh,* No. 90–1473–CIV (S.D.

Fla. July 23, 1990); *Morrobel v. Thornburgh,* No. 90–0985–A (E.D.Va. June 27, 1990). However, this Court believes the gravamen issue is beyond

### A.

In determining whether § 1252(a)(2) is unconstitutional, this Court has decided to follow the analysis in *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), in which a two-step inquiry was utilized to determine if pretrial detention under the Bail Reform Act of 1984 violated the substantive due process rights of the Petitioner. The Court considered whether the restriction on liberty was (1) an "impermissible punishment or permissible regulation;" and (2) excessive in relation to the legislative goal of the Congress. *Id.* at 747, 107 S.Ct. at 2101.

It is well established that deportation is a regulatory measure. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984); *Carlson*, 342 U.S. at 537, 72 S.Ct. at 532. Consequently, this Court must look to the legislative intent behind the statute to determine if the regulation is permissible. *Salerno*, 481 U.S. at 747, 107 S.Ct. at 2101 (citing *Schall v. Martin*, 467 U.S. 253, 269, 104 S.Ct. 2403, 2412, 81 L.Ed.2d 207 (1984)).

Within the past few years, Congress has mounted a tremendous assault on the prevalence of drugs in today's society. The Anti–Drug Abuse Act of 1988, *supra,* provides stricter mechanisms for attacking the country's drug problem, including the classification of drug trafficking as an aggravated felony. In its discretion, Congress has determined that aliens who have been convicted of drug trafficking crime are "conclusively presumed to be deportable from the United States." 8 U.S.C. § 1252a(c) (1988). It is clear that preventing an alien's release on bail pending deportation is the natural application of the legislative desire to protect the country. Therefore, the Congressional goals are legitimate and permissible.

However, this Court must now determine if the regulations are excessive in light of the goals that they seek to achieve in this legislation. § 1252(a)(2) authorizes the

the *Fiallo* standard and within the authority of this Court to fully review. *See, Leader v. Blackman*, 744 F.Supp. 500 (S.D.N.Y.1990); *Chao*

mandatory detention of aliens who have been convicted of aggravated felonies and specifically prescribes that "the Attorney General *shall not release such felon from custody."* 8 U.S.C. § 1252(a)(2) (1988) (emphasis added). This mandate is precisely the type of governmental conduct that " 'shocks the conscience' and 'interferes with the rights implicit in the concept of ordered liberty.' " *Salerno*, 481 U.S. at 746, 107 S.Ct. at 2101 (quoting *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952); and *Palko v. Connecticut*, 302 U.S. 319, 325–26, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)).

In *Salerno*, the Supreme Court recognized the extensive safeguards that Congress had placed within the Bail Reform Act of 1984 and commented that "[i]n a full blown adversary hearing, the Government must convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person." 481 U.S. at 750, 107 S.Ct. at 2103.

In the case at bar, the statute does not permit any type of hearing on the question of whether bail should be permitted. Instead, the statute requires the Attorney General to expedite the deportation hearing so that the proceedings and any appeals are completed prior to the alien's release from incarceration. 8 U.S.C. § 1252a(d) (1988). However, this provision alone does not provide a remedy in those situations where the deportation proceedings have not concluded and an alien is placed in custody indefinitely. It is in these situations that a deprivation of liberty occurs, and for this reason that a failure to provide a bail hearing constitutes a violation of Paxton's constitutional right to substantive due proces.

### B.

Similarly, the failure by the INS to provide a hearing violates Paxton's procedural due process as well. This Court recognizes that bail may be denied in deporta-

*Yang v. INS,* No. 3–90–CV–300 (D.Minn. June 27, 1990).

tion cases. However, the blanket prohibition against bail for an alien who has been convicted of an aggravated felony prohibits a case by case determination of the detainee's suitability for release on bail. This Court is aware of no deportation case or statute which fails to provide a claimant with an opportunity to present his arguments for release on bail. *See, Salerno,* 481 U.S. at 747, 107 S.Ct. at 2101; *Carlson,* 342 U.S. at 538, 72 S.Ct. at 533; 8 U.S.C. § 1252(a)(1) (1988) (Attorney General given *discretion* to hold aliens without bail).

Procedural due process requires that the restriction be implemented fairly. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The failure to allow a bail hearing prevents any fair and reasonable implementation of § 1252(a)(2). A balancing of the interests persuades this Court that the administrative and fiscal burdens of allowing such bail hearings do not outweigh the risk of erroneous deprivations of liberty. *Id.* at 335, 96 S.Ct. at 903.

### C.

■ Lastly, Paxton suggests that § 1252(a)(2) violates the prohibition within the Eighth Amendment against excessive bail. Again, this Court notes that there is no absolute right to bail. However, a statute, which authorizes a mandatory denial of bail, achieves the same result. As Justice Marshall wrote in *Salerno,* "[w]hether the magistrate sets bail at $1 billion or refuses to set bail at all, the consequences are indistinguishable. It would be mere sophistry to suggest the Eighth Amendment protects against the former and not the latter." 481 U.S. at 761, 107 S.Ct. at 2108 (J. Marshall dissenting). Given the previous conclusions of this Court, § 1252(a)(2) would appear to violate this Amendment as well.

### III.

The drug epidemic within the United States has led the Congress to enact an array of combative legislation. § 1252(a)(2) attempts to provide an efficient method of deporting aliens who are involved in the drug trade. Despite its

noble purpose and varied administrative procedures, § 1252(a)(2) fails to satisfy the basic requirements of due process under the Fifth Amendment. Although bail is not an absolute right under our laws, an individual must be given the opportunity to challenge his custody and, if appropriate, receive release on bail.

Thus, this Court orders the Defendants to conduct an immediate hearing to determine Paxton's suitability, if any, for release on bail pending a final adjudication of deportability.

IT IS SO ORDERED.