**Alwyn George DAVIS**

v.

**John WEISS, Officer in Charge Immigration and Naturalization Service, and The Department of Justice, Executive Office for Immigration Review.**

**Civ. No. H–90–725 (TEC).**

United States District Court,
D. Connecticut.

Oct. 22, 1990.

W. David Zikzkat, Hartford, Conn., for petitioner.

Carmen Espinosa Van Kirk, Asst. U.S. Atty., Stanley A. Twardy, Jr., U.S. Atty., Hartford, Conn., for respondents.

RULING ON PETITIONER'S MOTION TO RECONSIDER DENIAL OF PETITION FOR HABEAS CORPUS AND TEMPORARY RESTRAINING ORDER

CLARIE, Senior District Judge.

The petitioner has filed an Application for a Writ of Habeas Corpus and for a Temporary Restraining Order seeking to enjoin the Immigration and Naturalization Service (INS) from continuing to detain the petitioner in custody, and denying him the right to a hearing for the determination of a reasonable bond under 8 U.S.C. 1252(a)(2), Section 242(a)(2) of the Immigration and Nationality Act. The petitioner claims that the statute is constitutionally infirm, because it denies a bail hearing to all aliens held in detention pending a final determination of deportability. After a review of the motion and its supporting memorandum, the response and the file, and following a full hearing on the motions, petitioner's motion is denied.

## FACTS

The petitioner is a 22 year old citizen of Jamaica, who has been a lawful resident of the United States since April 12, 1984. On February 28, 1989 he was arrested in Hartford, Connecticut for possession of narcotics, possession with intent to sell, and maintaining a drug factory. Petitioner pled guilty in State Court to possession with intent to sell narcotics in violation of Section 21a–277(a) of the Connecticut General Statutes. He was sentenced to serve three years, execution of the sentence suspended after one year, to be followed by three years probation. Petitioner only served seventeen days of his sentence and was released by the State of Connecticut.

On July 2, 1990 a warrant for the petitioner's arrest was issued by John Weiss, an Officer in Charge of the Immigration and Naturalization Service, charging him with being deportable under the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(4)(B) in that he had been convicted of an aggravated felony, and under Section 1251(a)(11) in that he had been convict-

ed of a violation of State law concerning controlled substances.[1] On July 25, 1990, the petitioner was informed that he was being held without bond pending a final determination of deportability. This notice advised him that he had a right to request a hearing before the Immigration Judge to redetermine the decision of the Immigration and Naturalization Service. On August 22, 1990 the petitioner requested a bond redetermination hearing. The Immigration Judge refused to rule on the availability of a bond because he found that the statute did not afford him jurisdiction over the issue.

On September 6, 1990 petitioner applied for a Writ of Habeas Corpus in this Court and a Temporary Restraining Order seeking to enjoin the defendants from holding him in detention pursuant to Section 1252(a)(2). The Court denied both of the petitioner's prayers for relief. The petitioner now moves this Court to reconsider its ruling and has filed briefs in support of its claims. The Government has responded thereto, by filing a written memorandum in opposition.

Since the petitioner does not challenge whether the Act is applicable to him or whether he is considered to be an "aggravated" felon under the Act, the sole issue before the Court, as the petitioner concedes, is whether Section 1252(a)(2) is constitutional on its face. Title 8 U.S.C. § 1252(a)(2) provides that "[t]he Attorney General shall take into custody any alien convicted of an aggravated felony upon completion of the alien's sentence for such conviction. Notwithstanding subsection ([1]) of this section, the Attorney General shall not release such felon from custody." An aggravated felony is defined by Title 8 U.S.C. 1101(a)(43) as follows: "The term 'aggravated felony' means murder, any drug trafficking crime as defined in section 924(c)(2) of title 18, United States Code, or any illicit trafficking in any firearms or destructive devices as defined in section

921 of such title, or any attempt or conspiracy to commit any such act, committed within the United States."

Most recently, the constitutionality of section 1252(a)(2) has been a source of considerable disagreement in the district courts. Of the reported cases, the majority have held the statute unconstitutional: *Paxton v. U.S. Immigration and Naturalization*, 745 F.Supp. 1261 (E.D.Mich.1990); *Leader v. Blackman*, 744 F.Supp. 500 (S.D.N.Y.1990); *Chao Yang v. INS*, No. 90–300, slip op. (D.Minn. June 27, 1990); *Agunobi v. Thornburgh*, 745 F.Supp. 533 (N.D.Ill. 1990); *Hunneiti v. Thornburgh*, No. 90 C 4169 (N.D.Ill. August 31, 1990). Two district courts have found the statute constitutional: *Eden v. Thornburgh*, No. 90–1473–CIV, slip op. (S.D.Fla. July 23, 1990); *Morrobel v. Thornburgh*, 744 F.Supp. 725 (E.D.Va.1990).

## DISCUSSION

The petitioner contends that the statute is unconstitutional because it does not comport with procedural and substantive Due Process. Initially, it should be noted that due process is afforded resident aliens within the jurisdiction of the United States. *Mathews v. Diaz*, 426 U.S. 67, 77, 96 S.Ct. 1883, 1890, 48 L.Ed.2d 478 (1975). However, it is equally important to recognize "the limited scope of judicial inquiry into immigration legislation." *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1976). *See also Hampton v. Mow Sun Wong*, 426 U.S. 88, 101 n. 21, 96 S.Ct. 1895, 1904 n. 21, 48 L.Ed.2d 495 (1976) ("[T]he power over aliens is of a political character and therefore subject to only narrow judicial review.") As the Second Circuit Court of Appeals recently noted, "control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.... [Thus] review of legislation involving matters of immigration and naturalization is

1. Section 1251(a)(11) states that "[a]ny alien in the United States ... shall, upon the order of the Attorney General, be deported who (11) is, or hereafter at any time after entry has been, a narcotic drug addict, or who at any time has

been convicted of a violation of, or a conspiracy to violate, any law or regulation of a State, the United States, or a foreign country relating to a controlled substance...."

limited." *Azizi v. Thornburgh*, 908 F.2d 1130, 1133 (2d Cir.1990), citing *Landon v. Plasencia*, 459 U.S. 21, 34, 103 S.Ct. 321, 330, 74 L.Ed.2d 21 (1982); *Fiallo v. Bell*, 430 U.S. at 792, 97 S.Ct. at 1478. In this light the Court now views the petitioner's claims.

The premise underlying petitioner's argument is that the full panoply of due process protections is afforded to resident aliens detained pending deportation. Petitioner relies on *Leader v. Blackman*, 744 F.Supp. 500 (S.D.N.Y.1990), which held this statute to be unconstitutional, because it failed to afford sufficient due process. In rendering the statute unconstitutional, the *Leader* court decided that the appropriate standard to determine what process is due is derived from *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987).[2]

Analogy to the inquiry made by the *Salerno* court is not appropriate in the present circumstance. *Salerno* was not a case arising out of immigration legislation or a case which applied the due process clause to immigration legislation. The due process analysis in *Salerno* involved pre-trial detention in the criminal context. Whereas, deportation and the detention incidental thereto are civil in nature. *Carlson v. Landon*, 342 U.S. 524, 538, 72 S.Ct. 525, 533, 96 L.Ed. 547 (1952); *see* also *Dor v. District Director, INS*, 891 F.2d 997, 1003 (2d Cir.1989); *Flores v. Meese*, 913 F.2d 1315 (9th Cir.1990).

In *Flores*, the Ninth Circuit Court of Appeals analyzed the type of process that should be afforded in the civil deportation context and held that the protections afforded by *Salerno* were inapplicable. The court stated:

> The Court's procedural due process analysis in *Salerno* [sic] was geared toward the rights of adult citizens facing detention in the criminal context (Citation omitted). The situation before us in this case involves the rights of juvenile aliens facing detention in the civil context.... [T]he quantum and type of due process protection afforded alien minors in civil deportation proceedings is different from that afforded adult criminals. We therefore do not need to follow the procedural due process analysis used by the Court in *Salerno*. .... Nor is it unusual that deportation proceedings, which by nature are not only "purely civil" but also a unique kind of civil proceeding, would feature fewer procedural due process protections than a criminal trial.

*Id.*, at 1336. *See e.g. INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984) (deportation is a regulatory measure not a form of punishment). In *Mathews v. Diaz*, 426 U.S. at 80, 96 S.Ct. at 1891, the Supreme Court noted that in the immigration context "Congress regularly makes rules that would be unacceptable if applied to citizens." *See also Fiallo v. Bell*, 430 U.S. at 792, 97 S.Ct. at 1478; *Hampton v. Mow Sun Wong*, 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976); *Bustos–Torres v. INS*, 898 F.2d 1053 (5th Cir.1990) (Miranda warnings not required in deportation context, proceeding is civil not criminal). In the case at bar petitioner is a resident alien facing deportation proceedings, having already been convicted of an aggravated felony and already determined to be presumptively deportable. *See* 8 U.S.C. § 1252a(c). Therefore, the Court finds that the protections afforded by *Salerno* are inapplicable here.

Rather, the Supreme Court teaches that a Court must uphold the legislation if there is a "facially legitimate and bona fide reason" for the statute's enactment and that it should not "look behind" that reason. *Fiallo*, 430 U.S. at 794, 97 S.Ct. at 1479. *See e.g. Kleindienst v. Mandel*, 408 U.S. 753, 770, 92 S.Ct. 2576, 2585, 33 L.Ed.2d 683 (1972). The petitioner, however, contends that the *Fiallo* standard of review is

---

**2.** The substantive due process test used by the *Salerno* Court involved a two step inquiry: "1) whether the restriction on liberty is impermissible punishment or permissible regulation; and 2) whether the restriction is excessive in relation to the regulatory goal Congress sought to achieve." *Id.* 481 U.S. at 747, 107 S.Ct. at 2101. The court found that if these tests are satisfied, the procedure must nevertheless be implemented fairly. *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)).

inapplicable because *Fiallo* involved an equal protection challenge. Yet, such a criticism is without merit. Recently, in *Azizi v. Thornburgh*, 908 F.2d 1130, 1133–34 (2d Cir.1990), the Second Circuit Court of Appeals had the opportunity to address both a due process and equal protection challenge to section 5 of the Immigration Marriage Fraud Amendments of 1986, 8 U.S.C. §§ 1154(h), 1255(e) (1988). In *Azizi* the Court merely inquired whether Congress had proferred a legitimate basis for the statute's enactment in determining its constitutionality. In light of this limited standard of review, the Court reviews the rationality of Congress' purpose behind the statute.

There can be no.doubt that Congress' enactment of this provision is based on legitimate purposes. One primary motivation behind the statute is to rebut the danger that aliens convicted of aggravated felonies, in particular serious drug offenses, are very likely to abscond if afforded bail. Preventing a detainee's release on bail would seriously inhibit his ability to avoid prompt deportation subsequent to a conclusive finding of deportability. The legislative history of the act demonstrates that Congress sought to avoid just such a result. An advocate of the provision found that the legislation would "ensure that illegal aliens convicted of drug or violent crimes are incarcerated until they are returned to their homeland...." 134 Cong. Rec. S14112 (daily ed. Oct. 3, 1988). Further, a Government Accounting Office Report identified that many of the aliens facing final deportation proceedings abscond: "A 1984 INS study reported that nationwide 76 percent of the aliens under a final order of deportation absconded, many of them after lengthy appeal procedures that had been resolved in favor of deportation. In fiscal year 1984, [the New York District Office] reported 2,757 aliens absconded. [They] apprehended 145 of them." 134 Cong.Rec. S14100 (daily ed., Oct. 3, 1988). Another bona fide purpose behind this pro-

vision is to aid in the fight against the ever threatening narcotics problem that faces our society today. As one Congressman pointed out this provision is part of "a strong unified strategy in stamping out this evil which is undermining our social institutions and which is killing so many of our young people." 134 Cong.Rec. H7077 (daily ed., Sept. 7, 1988). In *Guan Chow Tok v. INS*, 538 F.2d 36, 38 (2d Cir.1976), the Second Circuit Court of Appeals found that Congress' decision to mandate deportation of alien narcotics offenders is not without rational justification. Therefore, based on the foregoing considerations, section 1252(a)(2) is premised upon bona fide purposes and does not, in substance, offend the Constitution.

Nevertheless, petitioner contends that the provision is violative of the Due Process clause in that it fails to allow for adequate procedures for detention pending a deportation hearing, namely an individualized bond hearing to determine whether the particular alien being detained is a threat to the community or a risk of flight. It must first be determined what is the appropriate inquiry into the adequacy of the process afforded, in light of the fact that traditional due process analysis is not applicable to immigration legislation. *See Flores, supra,* at 1336–37.[3] The Government, relying on *Anetekhai v. INS,* 876 F.2d 1218, 1223 (5th Cir.1989), contends that a court must determine only whether the procedure in question is fair. (*See* Government's Memorandum in Opposition to Plaintiff's Motion to Reconsider, p. 17.) The petitioner contends that traditional inquiry set out in *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976) should apply.

In *Flores,* the Ninth Circuit determined that even though fewer procedural due process protections are afforded in the immigration context, the *Mathews* test is nevertheless required to assess the constitutionality of the procedures employed. *Flores,*

---

**3.** The *Flores* court recognized several instances where traditional procedural due process protections are not afforded in Immigration proceedings: 1) The exclusionary rule; 2) quantum of proof; 3) the need for Miranda warnings before a voluntary statement is given; 4) the ex post facto clause; and 5) the inadmissability of involuntary confessions. *Flores,* at 1336–37.

*supra*, at 1336–37. Additionally, in *Landon*, the Supreme Court applied the *Mathews* test in determining the procedures due a present permanent resident alien. *Landon v. Plasencia*, 459 U.S. 21, 34, 103 S.Ct. 321, 330, 74 L.Ed.2d 21 (1982). Thus, the Court is persuaded that it should utilize the *Mathews* balancing test to determine whether the procedures afforded aliens who meet aggravated felon status and who are being detained pending a final determination of deportability, meet with the requirements of the Constitution.

Under the test set forth in *Mathews*, this Court must weigh three factors: "1) The private interest affected; 2) the risk of an erroneous deprivation of such interest through the procedures currently used, and the probable value, if any, of additional or substitute procedural safeguards; and 3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903.

The private interest at stake is the alien's right to bail pending final deportation proceedings. By alleging that he is entitled to a bond hearing the petitioner is effectively asserting that he has, in the first instance, a right to a bail. To cloak his prayer for relief as merely a request for a hearing disguises the essence of the issue. Implicitly, by mandating detention without release pending a final determination of deportability, Congress has determined that such a hearing is unnecessary. In evaluating this alleged right, Section 1252(a)(2) does not deprive petitioner of a vitally protected interest under the *Mathews* test. Petitioner has not cited a case which finds that an alien has a fundamental right to bail. Indeed, the Supreme Court has determined that bail may be denied in certain circumstances without depriving an individual of any constitutional guarantees. *Carlson v. Landon*, 342 U.S. 524, 542, 72

S.Ct. 525, 535, 96 L.Ed. 547 (1952); *see* also *United States v. Salerno*, 481 U.S. at 753–54, 107 S.Ct. at 2104–05. In *Salerno* the Supreme Court found that the Bail Reform Act did not violate the Eighth Amendment prohibition on excessive bail. It held that "when Congress has mandated detention on the basis of a compelling interest ... the Eighth Amendment does not require release on bail." *Id.* at 754–55, 107 S.Ct. at 2105.

In *Carlson*, the Attorney General was vested with the discretionary power to deny bail to any alien communists being held pending deportation under the Internal Security Act of 1950 if "there was reasonable cause to believe that [their] release would be prejudicial to the public interest and would endanger the welfare and safety of the United States." *Id.* at 529, 72 S.Ct. at 528–29.[4] The Act's purpose was to "deport all alien Communists as a menace to the security of the United States...." *Id.* at 541, 72 S.Ct. at 534. The Supreme Court upheld the constitutionality of the statute in the face of a challenge that the Attorney General's discretionary authority to deny bail was overly broad. The Court found that "[t]here is no denial of the due process of the Fifth Amendment under circumstances where there is reasonable apprehension of hurt from aliens charged with a philosophy of violence against this Government." *Id.* at 542, 72 S.Ct. at 535.

The petitioner seeks to distinguish *Carlson* on the basis that all the aliens subject to Section 1252(a)(2) are held without bond as there is no opportunity for discretion or exception to mandatory detention. Such a contention lacks merit. While it is true that the Supreme Court found that if all aliens were subject to the Internal Security Act's detention provisions and the Attorney General wholly lacked discretion, the statute would not withstand constitutional scrutiny. *Id.* at 538, 72 S.Ct. at 533. How-

---

**4.** Section 23 of the Internal Security Act of 1950: "... Pending final determination of the deportability of any alien taken into custody under warrant of the Attorney General, such alien may, in the discretion of the Attorney General

(1) be continued in custody; or (2) be released under bond in the amount of not less than $500, with security approved by the Attorney General; or (3) be released on conditional parole...."

ever, reliance on such language to invalidate the statute at issue here is unpersuasive. Concededly, section 1252(a)(2) provides for mandatory detention for all "aggravated felon" aliens awaiting a final deportation hearing. However, all aliens are not subject to the Act. By its very terms, the Act provides for special deportation proceedings only for aliens convicted of specifically identified categories of felonies. In these categories, these aliens are presumed to be deportable. 8 U.S.C. § 1252a(c) (1988). The groups are narrowly defined: 1) murder; 2) drug trafficking crimes or 3) any illicit trafficking in any firearms or destructive devices. Furthermore, the Act operates to detain such felons without bond only after the alien has served his sentence for such offense. Thus, the Act does not apply to all aliens who face deportation proceedings, only those "aggravated felons" who have already been convicted of serious felonies and have already been incarcerated for that offense.

The regulations promulgated pursuant to the statute further provide for a mechanism to evaluate the propriety of the detention of an individual alleged to be an aggravated felon to insure that the individual properly falls within the categories delineated by the Act. See 8 C.F.R. 242.2(c), 242.2(d); 8 U.S.C. § 1252(a)(1). These provisions provide that the INS's determination of custody may be reviewed by the Immigration Judge "upon application by the respondent for release from custody." At such a hearing, the alien is entitled to contest whether his conviction meets the aggravated felony requirements of 8 U.S.C. § 1101(a)(43). The statute further requires expedited deportation proceedings. See 8 U.S.C. § 1252a(d). In all, an alien being detained without the opportunity for bail under the Act has sufficient safeguards to determine whether he properly falls under it.

Since the Court has concluded that less than a vitally protected interest is at stake here, there is little probable value to the use of substitute or additional procedures. The petitioner advocates that a hearing should be given to determine and weigh the individual detainees risk of flight and danger to the community. However, such procedures would not prove valuable, since Congress has determined that felons subject to the mandatory detention are not entitled to bail in the first instance. The most effective procedures are those already built into the statute, namely those procedures which ensure that the alien is rightfully an "aggravated felon" under the Act and is properly subject to mandatory detention.

The government's interest in detaining these certain classes of aliens pending deportation is weighty. This provision is part of an Act which is clearly designed to supplement Congress' comprehensive assault on drugs. Presently, narcotics abuse is one of the most serious domestic threats this country faces and this Act is a part of Congress' effort to control it. This is obvious from the plain language of the statute where Congress determined that aliens convicted of such serious narcotics crimes are "conclusively presumed to be deportable." See 8 U.S.C. § 1252a(c). Considering that fact, the government has a significant interest in ensuring the alien's presence at the deportation hearing. Adequate measures to prevent those aliens from absconding is essential so that the purposes of the Act will be realized. Indeed, the Supreme Court in Carlson found that "detention is a necessary part of th[e] deportation procedure." Carlson, 342 U.S. at 538, 72 S.Ct. at 533. Section 1252a(d)(2) has equal importance here. Overall, in weighing the factors under the Mathews test, the government's interest in ensuring the presence of convicted aggravated felons at deportation proceedings is paramount to an alien's individual right to bail. The overall procedures afforded ensure that the alien is not improperly subject to the mandatory detention provided for by the Act.

The issue before the Court is whether Congress' refusal to allow a bond hearing to a certain class of resident aliens who have been convicted of specific "aggravated felonies", and who await a final deportation hearing, comports with the Constitution. If the Government fails to follow the

required statutory procedures, or the alien is unduly detained for any impermissible length of time pending the deportation hearing, the alien would always have a writ of habeas corpus as a remedy available to him. Nothing in this opinion will detract from the alien's entitlement to this equitable process in the event of deviations from the statutory law.

The petition for Writ of Habeas Corpus and request for a Temporary Restraining Order are hereby denied.

SO ORDERED.