Robert PROBERT, Plaintiff,

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE; Richard A. Thornburgh, Attorney General; Eugene P. McNary, Commissioner, Immigration and Naturalization Service, and James H. Montgomery, District Director, Immigration and Naturalization Service, Defendants.**

No. 90–CV–73119–DT.

United States District Court,
E.D. Michigan, S.D.

Oct. 31, 1990.

Marshal E. Hyman, Birmingham, Mich., Harold S. Fried, Southfield, Mich., for plaintiff.

L. Michael Wicks, Asst. U.S. Atty., Detroit, Mich., for defendants.

## OPINION

GILMORE, District Judge.

This matter is before the Court upon Plaintiff's Complaint seeking declaratory judgment and preliminary and permanent injunctions against Defendants from enforcing 8 U.S.C. § 1252 in detaining Plaintiff.

Plaintiff was sentenced by Judge Duggan of this Court on October 17, 1989 to a term of three months, with a special recommendation that he be incarcerated in an institution with a substance abuse program. He was also given three years supervised release, with the special condition that, for the first three months of supervised release, he should reside in a community confinement facility selected by the Court. Other conditions were placed upon the supervised release. Subsequently, Judge Duggan entered a Judicial Recommendation Against Deportation under the authority of 8 U.S.C. § 1251(b)(2). Judge

Duggan's recommendation provided in pertinent part:

For the reasons set forth above,

This Court does hereby RECOMMEND to the Attorney General, pursuant to 8 U.S.C. § 1251(b)(2), that the conviction for which the defendant was sentenced by this Court not be used as the basis for any deportation proceeding.

On February 5, 1990, Plaintiff was released from the Federal Medical Center, and began a 90 day community-based substance abuse program. He completed this on May 14, 1990, and presently remains on supervised release. That supervised release will terminate some time in 1993.

On August 17, 1990, a request was made by Plaintiff for a grant of advanced parole, pursuant to 8 U.S.C. § 1182(d)(5)(a). This was denied on October 10 by the Director of Refugee and Parole. In addition, on October 18, 1990, James Montgomery, District Director of Immigration, sent a letter to the Plaintiff stating that, because of Plaintiff's classification as an aggravated felon,[1] he was required to report on Tuesday, October 23, 1990, to be detained until he departed the United States. The Immigration and Naturalization Service (INS) previously had held a hearing and ordered Plaintiff deported based on his alcoholism; that matter presently is on appeal in the INS.

The statute pursuant to which the INS now threatens to detain Plaintiff is 8 U.S.C. § 1252(a)(2), which excepts aggravated felons from the bail hearing usually provided aliens under 8 U.S.C. § 1252(a)(1). These Statutes provide:

§ 1252. Apprehension and deportation of aliens

**(a) Arrest and custody; review of determination by court; aliens committing aggravated felonies; report to Congress committees**

(a)(1) Pending a determination of deportability in the case of any alien as

---

**1.** The conviction of Plaintiff for importation of drugs before Judge Duggan is an aggravated felony within 8 U.S.C. § 1252(a)(2). An aggravated felony includes murder, any drug trafficking crime as defined in 18 U.S.C. § 924(c)(2), or any illicit trafficking in any fire arms or any destructive devices. Plaintiff falls within the definition of aggravated felony because of his conviction for importing cocaine.

provided in subsection (b) of this section, such alien may, upon warrant of the Attorney General, be arrested and taken into custody. Except as provided in paragraph (2), any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (A) be continued in custody; or (B) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (C) be released on conditional parole. But such bond or parole, whether heretofore or hereafter authorized, may be revoked at any time by the Attorney General, in his discretion, and the alien may be returned to custody under the warrant which initiated the proceedings against him and detained until final determination of his deportability. Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or parole pending final decision of deportability upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to determine deportability.

(2) The Attorney General shall take into custody any alien convicted of an aggravated felony upon completion of the alien's sentence for such conviction. Notwithstanding subsection (a) of this section, the Attorney General shall not release such felon from custody.

## I

■ The first issue the Court must determine in deciding whether injunctive and declaratory relief are justified is whether Plaintiff has completed his sentence. 8 U.S.C. § 1252(a)(2) provides that the alien shall not be taken into custody until completion of his sentence. Plaintiff argues that the term of supervised release that he

is presently serving is part of his sentence, and, therefore, the Statute cannot be invoked.

Sentence is not defined in the Immigration and Naturalization Act, but the Board of Immigration Appeals (BIA) considered the issue exhaustively in *In re Brian Clifford Eden, Int.* Dec. 3137 (B.I.A. June 14, 1990). That case analyzed the split in circuits as to whether probation was a sentence, considered the general usage of the term, and examined the legislative history of the Anti–Drug Abuse Act of 1988. The BIA determined that "sentence" referred to the period of actual confinement that had been ordered by the court and did not include probation.

The Supreme Court has said that, if Congress has not defined a term in a statute, then this Court must look to the administering agency for permissible constructions of the statute. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). In light of *Chevron's* mandate, this Court finds the BIA's construction permissible. Judge Cook of this Court, in *Paxton v. INS,* 745 F.Supp. 1261 (E.D.Mich.1990), stated that he would adopt the definition of the BIA. Moreover, the determination of the Board is consistent with Sixth Circuit cases, which have held that, for other purposes, probation is not a sentence. *Sims v. United States,* 607 F.2d 757 (6th Cir.1979); *United States v. Fried,* 436 F.2d 784, 787 (6th Cir.1971). In *Sims,* the Court said, citing *Fried*:

> When the Court suspends the imposition of sentence and places the defendant on probation, it is authorized, upon revocation of probation, to impose any sentence within the limits of statutory authority. Merely placing a defendant on probation is not a sentence under 18 U.S.C. § 3651.

*Id.* at 759.

Finally, it is clear that supervised release under the Federal Sentencing Guidelines is the same as probation.[2] Based on the above analysis, the Court holds that, for

---

**2.** *See,* for example, *United Sates Sentencing* *Commission Guideline Manual,* § 5B1.4.

purposes of 8 U.S.C. § 1252(a)(2), Plaintiff's supervised release is not a sentence. Therefore, the Court concludes that Plaintiff has completed his sentence.

## II

The second matter the Court must determine is whether detention violates Judge Duggan's Judicial Recommendation Against Deportation. Plaintiff argues that the Judicial Recommendation Against Deportation sanitized Plaintiff's conviction, and that his conviction cannot now be used to support the aggravated felony requirement of the Statute, particularly when the detention is in aid of a deportation proceeding.

The INS, on the other hand, argues that the Judicial Recommendation Against Deportation has nothing to do with the INS's present effort to detain Plaintiff. It argues that the only purpose of a Judicial Recommendation Against Deportation is to prevent the use of the conviction in deportation proceedings. It is not now violated, it claims, because INS seeks deportation based on Plaintiff's aggravated alcoholism.

The Court in this instance agrees with the reasoning of the INS. The language of the Statute on its face concerns only detention, and the conviction is being used to support detention under the terms of the Statute, not to support deportation. It would be judicial overreaching to find that the Judicial Recommendation Against Deportation protected Plaintiff from INS's use of his conviction in detention proceedings.

## III

Having disposed of these two issues, the Court comes to the key issue before the Court, namely the constitutionality of the Statute under substantive and procedural due process and under the Eighth Amendment.

In reviewing Plaintiff's substantive and procedural due process claims and Eighth Amendment claims, the Court recognizes that there is a highly deferential standard of review under *Fiallo v. Bell,* 430 U.S.

787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977). There, the Court said:

> At the outset, it is important to underscore the limited scope of judicial inquiry into immigration legislation. This Court has repeatedly emphasized that "over no conceivable subject is the legislative power of Congress more complete than it is over" the admission of aliens. *Oceanic Navigation Co. v. Stranahan,* 214 U.S. 320, 339 [29 S.Ct. 671, 676, 53 L.Ed. 1013] (1909); accord, *Kleindienst v. Mandel,* 408 U.S. 753, 766 [92 S.Ct. 2576, 2583, 33 L.Ed.2d 683] (1972). Our cases "have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Shaughnessy v. Mezei,* 345 U.S. 206, 210 [73 S.Ct. 625, 628, 97 L.Ed. 956] (1953); *see, e.g., Harisiades v. Shaughnessy,* 342 U.S. 580 [72 S.Ct. 512, 96 L.Ed. 586] (1952); *Lem Moon Sing v. United States,* 158 U.S. 538 [15 S.Ct. 967, 39 L.Ed. 1082] (1895); *Fong Yue Ting v. United States,* 149 U.S. 698 [13 S.Ct. 1016, 37 L.Ed. 905] (1893); *The Chinese Exclusion Case,* 130 U.S. 581 [9 S.Ct. 623, 32 L.Ed. 1068] (1889).

*Id.* 430 U.S. at 792, 97 S.Ct. at 1478.

*Fiallo,* however, does not foreclose all judicial review. It is a part of a long line of Supreme Court cases which provides that over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens. *Oceanic Steam Navigation Co. v. Stranahan,* 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909); *Shaughnessy v. United States,* 345 U.S. 206, 210, 73 S.Ct. 625, 628, 97 L.Ed. 956 (1953), and *Hampton v. Mow Sun Wong,* 426 U.S. 88, 101, n. 21, 96 S.Ct. 1895, 1904, n. 21, 48 L.Ed.2d 495 (1976.) Nevertheless, *Fiallo* recognizes the existence of " 'narrow judicial review' " *Id.* 430 U.S. at 792, 97 S.Ct. at 1478, quoting *Hampton v. Mow Sun Wong, supra.* In footnote 5, the *Fiallo* Court delineates the power of the judiciary branch over INS:

> Our cases reflect acceptance of a limited judicial responsibility under the Constitution even with respect to the power of

Congress to regulate the admission and exclusion of aliens.

In *Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952), the Court pointed out that, although the power to expel aliens is essentially a power of the political branches of Government, it is always "subject to judicial intervention under the 'paramount law of the Constitution.'" *Id.* at 537, 72 S.Ct. at 533 quoting, *Fong Yue Ting v. United States,* 149 U.S. 698, 713–15, 13 S.Ct. 1016, 1022–23, 37 L.Ed. 905 (1893). Further, in *Almeida–Sanchez v. United States,* 413 U.S. 266, 272, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973), a Fourth Amendment case, the Court stated unequivocally: "It is clear, of course, that no act of Congress can authorize a violation of the Constitution."

Therefore, despite this Court's limited power of review involving aliens, the Court retains the power to review the constitutionality of statutes that affect the status of aliens. 8 U.S.C. § 1252(a)(2), pursuant to which INS seeks to detain Plaintiff, mandates that the Attorney General take into custody any alien convicted of an aggravated felony upon completion of the alien's sentence, and that the Attorney General not release the felon from custody. It is clear to the Court that this provision is unconstitutional as a denial of substantive and procedural due process, and constitutes cruel and unusual punishment in violation of the Fifth and Eighth Amendments.

By now, eight courts have considered the constitutionality of this Statute. Several, including Judge Cook of this District, have declared it unconstitutional. *Paxton v. United States Immigration and Naturalization,* 745 F.Supp. 1261 (E.D.Mich.1990); *Leader v. Blackman,* 744 F.Supp. 500 (S.D. N.Y.1990); *Agunobi v. Thornburgh,* 745 F.Supp. 533 (N.D.Ill.1990); *Hunneiti v. Thornburgh,* No. 90 c 4169 (N.D.Ill. August 31, 1990). Three district courts have found the Statute constitutional: *Eden v. Thornburgh* No. 90–1473–CIV, slip op. (S.D.Fla. July 23, 1990); *Morrobel v. Thornburgh,* 744 F.Supp. 725 (E.D.Va.

1990). *Davis v. Weiss,* 749 F.Supp. 47 (D.Ct.1990).

It is clear to this Court that 8 U.S.C. § 1252(a)(2) violates substantive and procedural due process. It is shocking to the conscience and interferes with the rights implicit in the concept of ordered liberty. *Paxton v. INS, supra. Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). It goes far beyond the protections people in a civilized society need, even in the midst of a drug scourge. It is true that Congress has broad authority in protecting Americans against illegal drug transactions by aliens. But in doing so, it must legislate within the protections of the Fifth Amendment. This statutory section fails to do that. Notwithstanding the fact that bail is not an absolute right, one must always be afforded the opportunity to present a case for release on bond pending a final decision on deportability to meet the Fifth Amendment mandate for substantive due process.

In addition, failure to provide a hearing prior to detention constitutes a violation of procedural due process. *Paxton, supra.* Although, under proper conditions, bail could be denied in a deportation case, a blanket prohibition against bail for an alien who has been convicted of an aggravated felony and who has completed his sentence, clearly prohibits a case-by-case determination of the detainee's suitability for release on bail.

Nothing is more fundamental in our constitutional system than the right of any person who is detained to have a hearing to determine the validity of such detention. To mandate detention after a person has completed his sentence for a felony, and to allow no provision whatever for bail, violates fundamental principles of procedural due process. Clearly, 8 U.S.C. § 1252(a)(2) cannot withstand constitutional scrutiny.[3]

The argument that aliens are a special class and should be given something less than normal due process does not hold up. The Fifth Amendment speaks of persons, as does the Eighth Amendment. It does

---

**3.** Even the United States Attorney admitted in argument that the provisions of this Statute

would not be constitutional if applied to a citizen.

not speak of citizens. It does not speak of residents. It speaks of persons. All persons are entitled to fundamental procedural due process, which is totally denied by the Statute in question.

As Judge Cook pointed out in *Paxton v. United States, supra,* the failure to allow a bail hearing prevents any fair and reasonable implementation of Section 1252(a)(2). He clearly held that this was a violation of procedural due process, and this Court agrees.[4]

This Court holds that 8 U.S.C. § 1252(a)(2) is clearly unconstitutional in that it deprives Plaintiff of his right to substantive and procedural due process, and violates the cruel and unusual punishment provisions of the Eighth Amendment.

## IV

■ In view of this determination, Plaintiff could thereupon come under the provisions of 1252(a)(1), and the Court must examine them. This Section provides that pending deportation of any alien, the Attorney General may issue a warrant to arrest the alien and take him or her into custody. Such alien may, in the discretion of the Attorney General, be continued in custody or be released on bond or on conditional parole. At any time, the Attorney General, in his discretion, may revoke bond or parole. The Statute allows judicial review of such revocation in habeas corpus before a court of competent jurisdiction only on the question of whether the Attorney General is proceeding with reasonable dispatch to determine deportability.

Once again, the Court finds this Statute to be lacking in constitutionality. Although this Statute allows bond to be set, or release upon conditional parole, it nevertheless allows discretionary revocation at any time by the Attorney General, and the returning of the alien to custody. The only review under the Statute is upon a "conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to determine deportability." 8 U.S.C. § 1252(a)(1).

Such limitation upon the power of habeas corpus is clearly unconstitutional. Habeas corpus is the Great Writ, and is a fundamental protection of all people against overreaching by agencies of the government. It is clearly recognized by the Constitution in Article 1, Section 9. The Supreme Court in *Harris v. Nelson,* 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969) has eloquently underscored its essential importance. It stated:

> The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action. Its pre-eminent role is recognized by the admonition in the Constitution that: "The Privilege of the Writ of Habeas Corpus shall not be suspended...." U.S. Const., Art. I, § 9, cl. 2. The scope and flexibility of the writ—its capacity to reach all manner of illegal detention—its ability to cut through barriers of form and procedural mazes—have always been emphasized and jealously guarded by courts and lawmakers. The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.

As Blackstone phrased it, habeas corpus is "the great and efficacious writ, in all manner of illegal confinement." As this Court said in *Fay v. Noia,* 372 U.S. 391, 401–402 [83 S.Ct. 822, 829, 9 L.Ed.2d 837] (1963), the office of the writ is "to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints." *See Peyton v. Rowe,* 391 U.S. 54, 65–67 [88 S.Ct. 1549, 1555–56, 20 L.Ed.2d 426] (1968).

\*     \*     \*     \*     \*     \*

---

**4.** With reference to the question of whether Section 1252(a)(2) violates the prohibition against the Eighth Amendment banning of excessive bail, this Court agrees with Judge Cook in *Paxton, supra,* that, although there is no absolute right to bail, a statute that mandatorily denies bail violates the Eighth Amendment.

There is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law. This Court has insistently said that the power of the federal courts to conduct inquiry in habeas corpus is equal to the responsibility which the writ involves: "The language of Congress, the history of the writ, the decisions of this Court, all make clear that the power of inquiry on federal habeas corpus is plenary." *Townsend v. Sain, supra,* [372 U.S. 293] at 312 [83 S.Ct. 745, 757, 9 L.Ed.2d 770] (1963). *Id.* at 290–92, 89 S.Ct. at 1086–87.

No statute can limit the power of habeas corpus as 8 U.S.C. § 1252(a)(1) does. The right to habeas corpus is absolute, and it may not be limited by statute, except in cases of rebellion and where the public safety is involved. United States Constitution Art. I, Section 9. Therefore, the Court holds that 8 U.S.C. § 1252(a)(1) is also unconstitutional as limiting the power of habeas corpus once the Attorney General has revoked bail.

The only way that Section 1252(a)(1) can be found constitutional is if there is a provision allowing proper judicial review of INS bail hearings by habeas corpus.

The Congress of the United States has recently spoken on the entire subject of bail in the Bail Reform Act of 1984, 18 U.S.C. § 3142 et seq. There, the Court set forth various standards for allowing bail. Basically the standards used were whether the defendant presented a serious risk of flight or a serious danger to members of the community, the same concerns that motivated ·Congress in passing 8 U.S.C. § 1252(a)(2). The Bail Reform Act and its progeny have been upheld by the Supreme Court in *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). In light of the provisions of 18 U.S.C. § 3142 et seq., and its approval by the United States Supreme Court, it ap-pears to this Court that the Bail Reform Act sets forth reasonable standards for bail. The test on whether bail should be granted or not is whether the person seeking bail presents a reasonable risk of flight, or will be a danger to the community, if released. The Court holds that a bail hearing must be conducted prior to any detention of the Plaintiff. Such hearing should be conducted by the proper administrative officer of the INS. Pending such hearing, Plaintiff shall remain free.

■ At the time a hearing is held, the hearing officer shall place the burden of proof on the INS to show that Plaintiff is either likely to flee or poses a danger to the community. If such a showing is not made, Plaintiff shall be placed on reasonable bail pending the outcome of his deportation proceedings. The Court recognizes that 18 U.S.C. § 3142 et seq. places the burden of proof on a criminal defendant on the question of flight risk and danger to the community. This Court determines, nevertheless, that the burden of proof in this case should be on the INS because the proceeding is civil in nature, Plaintiff having completed his sentence.

If, after this hearing, Plaintiff is detained and denied bail, he shall have a right to review the matter in this Court by a writ of habeas corpus, with no restrictions whatever.

### V

Based on the foregoing, the Court grants Plaintiff's Application for Preliminary and Permanent Injunctions and Declaratory Relief. Appropriate orders may be submitted.