Rolando **CABALLERO**

v.

**John B.Z. CAPLINGER, Usins District Director.**

**Civil A. No. 95–3129.**

United States District Court, E.D. Louisiana.

Feb. 6, 1996.

---

Thomas Adams, New Orleans, LA, for plaintiff.

Matilda A. Baker, Ins, New Orleans, LA, Nancy A. Nurigessen, Asst. U.S. Atty., New Orleans, LA, for defendant.

## ORDER AND REASONS

BERRIGAN, District Judge.

Rolando Caballero has petitioned the court for a writ of habeas corpus and a declaratory judgment concerning the constitutionality of his confinement. His request is GRANTED as set forth below.

## I. BACKGROUND

Rolando Caballero is a Cuban citizen who illegally entered the United States in 1984. Seven years later, Caballero was convicted of federal cocaine distribution charges. The trial court sentenced him to a term of 120 months imprisonment, which was subsequently reduced to time served (25 months) on motion of the United States. Caballero completed his sentence in October 1993, at which time he was transferred to the custody of the Immigration and Naturalization Service (INS).

The INS commenced deportation proceedings against Caballero based on his illegal entry into the country, his conviction of a drug offense and the fact that the conviction was for an aggravated felony. 8 U.S.C. §§ 1251(a)(1)(B), 1251(a)(2)(B)(i), 1251(a)(2)(A)(iii). In November 1993, an Immigration Judge ordered that Caballero be deported to Cuba. The deportation order has since become final.

The INS has been unable to deport Caballero because Cuba refuses to accept him. Caballero has remained in INS custody since October 1993. The INS is detaining him pursuant to 8 U.S.C. § 1252(a)(2)(A), which states:

> The Attorney General shall take into custody any alien convicted of an aggravated felony upon release of the alien (regardless of whether or not such release is on parole, supervised release, or probation, and regardless of the possibility of rearrest or further confinement in respect of the same offense).... [T]he Attorney General shall not release such felon from custody.

The statute contains a bail provision for lawfully admitted aliens involved in deportation proceedings who can demonstrate that they are not a threat to the community and are likely to appear for any scheduled hearings.[1]

The bail provision does not apply to aliens who entered the country unlawfully.[2] Caballero has filed for habeas corpus and declaratory relief, alleging that his indefinite confinement under the statute violates his rights to substantive due process, procedural due process and equal protection, as well as his Eighth Amendment protection against excessive bail.

## II. DISCUSSION

■ The starting point for judicial review of immigration legislation is the Supreme Court's repeated admonition that:

> '[O]ver no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens ... [I]n the exercise of its broad power over immigration and naturalization, 'Congress regularly makes rules that would be unacceptable if applied to citizens.'

*Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977) (citations omitted). Nonetheless, aliens, both legal and illegal, are entitled to the constitutional protections of due process, equal protection and reasonable bail. *Mathews v. Diaz,* 426 U.S. 67, 77, 96 S.Ct. 1883, 1890, 48 L.Ed.2d 478 (1976); *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *See Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952).

The previous version of § 1252 mandated the detention of all aliens convicted of aggravated felonies pending deportation, regardless of whether they legally entered the country. The majority of district courts examining the statute concluded that it was unconstitutional. *Fernandez–Santander v. Thornburgh,* 751 F.Supp. 1007 (D.Me.1990), *vacated and remanded without opinion,* 930 F.2d 906 (1st Cir.1991); *Kellman v. District Director, U.S. I.N.S.,* 750 F.Supp. 625 (S.D.N.Y.1990); *Probert v. U.S. I.N.S.,* 750 F.Supp. 252 (E.D.Mich.1990), *aff'd.,* 954 F.2d

---

**1.** Section 1252(a)(2)(B) states:

The Attorney General may not release from custody any lawfully admitted alien who has been convicted of an aggravated felony, either before or after a determination of deportability, unless the alien demonstrates to the satisfaction of the Attorney General that such alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings.

**2.** As petitioner's counsel noted at oral argument, an alien who entered the country lawfully but whose presence subsequently became unlawful due to an expired visa or other such circumstance would be eligible for the bail provision.

1253 (6th Cir.1992); *Paxton v. U.S. I.N.S.,* 745 F.Supp. 1261 (E.D.Mich.1990); *Agunobi v. Thornburgh,* 745 F.Supp. 533 (N.D.Ill. 1990); *Leader v. Blackman,* 744 F.Supp. 500 (S.D.N.Y.1990); *contra Davis v. Weiss,* 749 F.Supp. 47 (D.Conn.1990); *Morrobel v. Thornburgh,* 744 F.Supp. 725 (E.D.Va.1990). The courts found varying constitutional violations, including substantive due process, procedural due process and excessive bail. The successful challenges to the statute involved legally resident aliens who were being detained during the pendency of their deportation proceedings.

In 1990, Congress amended § 1252 to include a bail provision for lawfully admitted aliens. The matter currently before the court is apparently one of first impression, namely a constitutional challenge by an alien who entered the country illegally and who has been detained under the statute without benefit of a bond hearing.[3]

### A. Due Process Challenge

Though rulings on the previous version of § 1252 are not directly on point, their analysis is applicable. The rulings generally begin with a discussion of the appropriate level of judicial scrutiny. Most of the courts which found the statute unconstitutional rejected the use of the deferential standard set forth in *Fiallo, supra.* Instead, the courts applied the due process analysis used by the Supreme Court in *U.S. v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), in which the court rejected a constitutional challenge to the Bail Reform Act of 1984. *E.g., Kellman,* 750 F.Supp. at 627.

■ The Bail Reform Act authorized "sweeping changes" in the government's ability to detain arrestees prior to trial. *Salerno,* 481 U.S. at 742, 107 S.Ct. at 2098. In considering the Act's constitutionality, the court explained that a deprivation of life, liberty or property violates the right to substantive due process if the government's conduct "shocks the conscience" or "interferes with rights 'implicit in the concept of ordered liberty.'" 481 U.S. at 746, 107 S.Ct. at 2101

(citations omitted). The court's first step was to determine whether the deprivation of a person's liberty absent a criminal conviction was impermissible pretrial punishment or legitimate, non-punitive regulation. Though the regulatory-punitive distinction is conclusory to a certain extent, a legitimate regulatory goal is generally present where a statute appears to be a "potential solution to a pressing societal problem." *Id.* at 747, 107 S.Ct. at 2101. If a court determines that the deprivation of liberty is for regulatory purposes, the court must then decide whether the regulatory means chosen by Congress are excessive in relation to the regulatory goal Congress sought to achieve. If a government action meets substantive due process standards, it can still be rejected as violative of procedural due process if it is not implemented in a fair manner. *Id.* at 746, 107 S.Ct. at 2101.

The parties argue that the court must choose either *Fiallo* or *Salerno* as the appropriate standard of review and imply that the choice will necessarily determine the outcome of Caballero's constitutional challenges. The court does not view the standards applied in *Fiallo* and *Salerno* as mutually exclusive. Applying the limited scope of review required by *Fiallo*, the court can still determine whether § 1252 meets the due process standards of *Salerno*. Moreover, limited review under *Fiallo* does not mean no review— *Fiallo* is not necessarily a graveyard for constitutional challenges. *See Probert,* 750 F.Supp. at 255.

■ As evidenced by the bail standard for lawfully admitted aliens, the purpose behind detaining aliens during deportation proceedings is to protect the community from aggravated felons and to prevent aliens from absconding before deportation can be accomplished. These are both legitimate governmental policy goals that can warrant a deprivation of liberty under the proper circumstances. *Salerno, supra; Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

---

**3.** Because Caballero was able to effect entry into the country, he does not fall into the class of aliens with the least constitutional rights, excluding aliens. *See Gisbert v. U.S. Attorney General,* 988 F.2d 1437, 1440 (5th Cir.1993).

The next issue is whether the means chosen by Congress are excessive in relation to the policy goal sought to be achieved. In other words, is detaining all unlawfully admitted aliens convicted of aggravated felonies an overbroad means of protecting society and preventing flight pending deportation. A number of courts concluded that the previous version of § 1252 was unconstitutionally overbroad. *Fernandez–Santander*, 751 F.Supp. at 1011; *Probert*, 750 F.Supp. at 256; *Paxton*, 745 F.Supp. at 1265; *Leader*, 744 F.Supp. at 507–8. Those cases are factually distinguishable as involving legally admitted aliens in the midst of deportation proceedings, as opposed to an unlawfully admitted alien whose deportation order is final. The issue presented is whether the factual distinction is of legal significance. Does Caballero have less substantive due process rights than the other detainees? The Second Circuit Court of Appeals has ruled that illegal aliens have a substantive due process right to liberty during deportation proceedings, but that it is a narrow right whose impingement is subject only to limited judicial review. *Doherty v. Thornburgh*, 943 F.2d 204, 208 (2nd Cir.1991), *cert. dismissed*, 503 U.S. 901, 112 S.Ct. 1254, 117 L.Ed.2d 485 (1992). Discussing the rights of legally admitted aliens, the Supreme Court has stated, "Of course purpose to injure ... [cannot] be imputed generally to all aliens subject to deportation." *Carlson v. Landon*, 342 U.S. 524, 538, 72 S.Ct. 525, 533, 96 L.Ed. 547 (1952). Does it "shock the conscience" to detain illegally admitted aliens convicted of aggravated felonies based on the assumption that they are all dangerous or will abscond pending deportation?

The substantive due process analysis essentially subsumes the procedural due process analysis in this case. As noted above, a deprivation of liberty that is acceptable on substantive grounds must be implemented fairly in order to satisfy procedural due process requirements:

> In evaluating the procedures in any case, the courts must consider the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures.

*Landon v. Plasencia*, 459 U.S. 21, 34, 103 S.Ct. 321, 330, 74 L.Ed.2d 21 (1982). Under § 1252, detention for unlawfully admitted aliens is automatic—there are no procedures employed to determine whether detention is warranted. The dispositive issue is whether an unlawfully admitted alien convicted of an aggravated felony has a constitutionally protected liberty interest in remaining free pending deportation. If such a right exists, then the statute is *a fortiori* violative of procedural due process rights because it does not provide any procedures for protecting the liberty interest. Conversely, if there is no right, the absence of any protective procedures is immaterial.

Though not factually unique, the government's inability to deport Caballero presents unusual factual circumstances for considering a challenge to the statute. *See Gisbert, supra* (indefinite detention of non-deportable aliens); *accord Tran v. Caplinger*, 847 F.Supp. 469 (W.D.La.1993). The automatic indefinite detention of a deportable alien may not have been envisioned by Congress, but the statute does not contain an exception for someone in Caballero's position. This court must apply the statute as written to the facts as presented. In so doing, the court finds that the mandatory detention of Caballero without the opportunity to make bail shocks the conscience. The fact that Caballero entered the country illegally does not extinguish his liberty interest in remaining free pending his deportation. The protections of the Fifth Amendment extend to all persons in this country, regardless of the lawfulness of their presence here. *Plyler*, 457 U.S. at 210, 102 S.Ct. at 2391. When balanced against Caballero's liberty interest, § 1252 is an overbroad means of protecting society's interest. An individualized bail hearing will protect society's interest, as well as Caballero's, by presenting an actual opportunity to determine whether he is a flight risk or a danger to society. Thus, the court finds that the statute is an unconstitutional deprivation of Caballero's substantive due process rights.

Having concluded that Caballero has a protected liberty interest in seeking his freedom pending deportation, the court also finds that the statute unconstitutionally deprives him of his procedural due process rights because it does not afford him an opportunity to protect his liberty interest.

█ Due process protections are "not final and fixed" but emerge from cases "reconciling the needs both of continuity and of change in a progressive society." *Rochin v. California*, 342 U.S. 165, 170–72, 72 S.Ct. 205, 208–10, 96 L.Ed. 183 (1952); *Rodriguez–Fernandez v. Wilkinson*, 654 F.2d 1382, 1388 (10th Cir.1981). This ruling is also consistent with evolving international human rights norms, norms which can help shape our own standards of due process. *Lareau v. Manson*, 507 F.Supp. 1177, 1187 n. 9 (D.Conn. 1980), *aff'd. in part*, 651 F.2d 96 (2nd Cir. 1981) (international human rights documents "are relevant to the 'canons of decency and fairness which express the notions of justice' embodied in the Due Process Clause.") [4]

The United Nations Charter, a treaty ratified by the United States, called upon the United Nations to promote the protection of human rights and for its member nations to undertake joint and separate action to achieve that goal.[5] Over the years, the United Nations has promulgated declarations and covenants which, while not technically binding on our courts, represent the collective consciousness of the international community, creating a hope if not an expectation of adherence. *Filartiga v. Pena–Irala*, 630 F.2d 876, 883 (2nd Cir.1980); *Rodriguez–Fernandez v. Wilkinson*, 505 F.Supp. 787,

796 (D.Kan.1980), *aff'd.*, 654 F.2d 1382 (10th Cir.1981); *Lareau, supra.*

A number of these documents condemn the "arbitrary" detention of persons; they call for speedy and specific review of the legality of the detention or else the release of the individual.[6] These documents have been cited by our courts in evaluating the legality of indeterminately detaining aliens:

> It seems proper … to consider international law principles for notions of fairness as to propriety of holding aliens in detention. No principle of international law is more fundamental than the concept that human beings should be free from arbitrary imprisonment.

*Rodriguez–Fernandez v. Wilkinson*, 654 F.2d 1382, 1388 (10th Cir.1981). Similarly:

> [T]he indefinite detention of [persons] … without periodic hearings establishing that the continued detention of each class member is reasonably necessary for early deportation or for the protection of society from one proven to be dangerous, appears to violate customary international law.

*Fernandez–Roque v. Smith*, 622 F.Supp. 887, 903 (N.D.Ga.1985); *see also Soroa–Gonzales v. Civiletti*, 515 F.Supp. 1049, 1061 n. 18 (N.D.Ga.1981).

Indeed, in at least one case, indeterminate detention of an alien was held legal under domestic and constitutional law, but illegal on the sole basis that it violated customary international law. *Rodriguez–Fernandez, supra, aff'd. on other grounds*, 654 F.2d 1382 (10th Cir.1981).[7]

The United States takes justifiable pride in its Constitution and Bill of Rights, but these

---

**4.** See also Gordon A. Christenson, *Using Human Rights Law to Inform Due Process and Equal Protection Analysis*, 52 U.Cin.L.Rev. 3 (1983).

**5.** 59 Stat. 1033, T.S. No. 993 (1945); U.N. Charter, Arts. 55 and 56. Article 62(2) authorizes the Economic and Social Council to issue recommendations for the promotion of human rights.

**6.** Universal Declaration of Human Rights, U.N.Doc. A/801 (1948), Arts. 3 and 9; American Convention of Human Rights, 77 Dept. of State Bulletin 28 (July 4, 1977), Art. 7(3); International Covenant on Civil and Political Rights, G.A.Res. 2200A(XXI), Dec. 16, 1966, U.N.Gen. Ass.Off.Rec., 21st Sess., Supp. No. 16, U.N.Doc.

A/6316 (1967), Art. 9; European Convention for the Protection of Human Rights and Fundamental Freedoms (Rome 1950), Art. 5. See also American Law Institute, *Restatement of the Law, The Foreign Relations Law of the United States*, § 702(e), comment h ("arbitrary detention violates customary law if it is prolonged and practiced as state policy.")

**7.** Other courts, however, have specifically rejected international law as a *binding* source of authority if an applicable domestic statute is in conflict. *Garcia–Mir v. Meese*, 788 F.2d 1446 (11th Cir.1986), *cert. denied*, 479 U.S. 889, 107 S.Ct. 289, 93 L.Ed.2d 263 (1986); *Fernandez–Roque v. Smith*, 622 F.Supp. 887 (N.D.Ga.1985).

international covenants and declarations are reminders of goals yet to be achieved. While not dispositive of the decision in this case, these principles reinforce the conclusion that the statute here, 8 U.S.C. § 1252(a)(2)(A), unconstitutionally deprives Caballero of his substantive and procedural due process rights.

### B.  Eighth Amendment

■ As with the procedural due process issue, a decision on substantive due process is dispositive of Caballero's Eighth Amendment challenge to the statute. The Eighth Amendment protects against the setting of excessive bail, but it does not provide an absolute right to bail. *Salerno,* 481 U.S. at 752–53, 107 S.Ct. at 2104–05. Because the court has determined that Caballero has a liberty interest in remaining free pending his deportation, a bail hearing to determine whether he poses a safety or flight risk is warranted. The statute violates the Eighth Amendment because the denial of the opportunity to seek bail constitutes the setting of excessive bail. *See Paxton,* 745 F.Supp. at 1266.

### C.  Equal Protection

■ Given the limited scope of judicial review of Congressional decisions regarding immigration, the court will review Caballero's equal protection challenge using a rational relationship test. *Leader,* 744 F.Supp. at 505–6; *see Fiallo,* 430 U.S. at 792, 97 S.Ct. at 1478. Caballero argues that § 1252 unlawfully distinguishes between lawfully and unlawfully admitted aliens. The court finds that an alien who enters the country illegally could have a greater potential than a legally admitted alien to once again avoid legal process by absconding during deportation proceedings. The statute does not violate the equal protection rights of unlawfully admitted aliens.

### D.  Service of Process

The government alleges in conclusory fashion that Caballero has not effected proper service of his petition. The government has had ample opportunity to address the issue, but has not provided any factual or legal argument or evidentiary support for its position. The government has not met its burden of demonstrating improper service of process.

Accordingly, **IT IS ORDERED** that Caballero's action for declaratory relief challenging the constitutionality of 8 U.S.C. § 1252 based on his inability to obtain a meaningful bail determination hearing is **GRANTED.** The INS is directed to give Caballero such a hearing within 30 days of the date of this order. Without such a hearing, the writ will issue.