Juan Hector **HERNANDEZ–EBANK**[1]

v.

**John B.Z. CAPLINGER, et al.**

**Civil Action No. 96–431.**

United States District Court,
E.D. Louisiana.

Dec. 17, 1996.

---

**1.** The records of the Immigration and Naturalization Service refer to the plaintiff as "Juan Hector Hernandez–Ebanks." However, the Court will refer to the plaintiff as set forth in the caption.

**100**

Juan Hector Ebank, New Orleans, LA, Pro Se.

Nancy Ann Nungesser, Jesse James Marks, U.S. Attorney's Office, New Orleans, LA, for U.S. Immigration and Naturalization Service, John B.Z. Caplinger, District Director.

Matilda Ann Baker, U.S. Immigration and Naturalization Service, Office of Dist. Counsel, New Orleans, LA, Pro Se.

## ORDER AND REASONS

BERRIGAN, District Judge.

The Pro Se Petitioner, Juan Hector Hernandez Ebank ("Ebank"), has petitioned the Court for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, concerning the constitutionality of his confinement by the United States Immigration and Naturalization Service ("INS"). His request is **DENIED.**

### I. Background

Ebank is a native and citizen of Cuba who initially entered the United States at Jacksonville, Florida during 1969 as a parolee. He last entered the United States at Champlain, New York on November 8, 1974 as a lawful permanent resident.[2] On December 16, 1994, the INS commenced deportation proceedings against Ebank with issuance of an Order to Show Cause ("OSC") based on his November 12, 1986, conviction for a drug offense. Moreover, that the referenced conviction constituted an aggravated felony pursuant to 8 U.S.C. §§ 1251(a)(2)(B)(i) and 1251(a)(2)(A)(iii).[3] Ebank has a significant criminal history that reflects a total of three convictions, two of which are felony convictions. On January 19, 1995, Ebank appeared before an Immigration Judge ("IJ"), where he admitted to the charges in the OCS.[4]

The INS has been unable to deport Ebank because Cuba refuses to accept him. Ebank has remained in INS custody since November 1994. The INS is detaining him pursuant to 8 U.S.C. § 1252(a)(2)(A), which states:

> The Attorney General shall take into custody any alien convicted of an aggravated felony upon release of the alien (regardless of whether or not such release is on parole, supervised release, or probation, and regardless of the possibility of rearrest or further confinement in respect of the same

---

2. Fifth Circuit jurisprudence holds that lawful permanent residence status terminates with the final order of deportation. *Rivera v. INS*, 810 F.2d 540 (5th Cir.1987); *Ghassan v. INS*, 972 F.2d 631, 633 (5th Cir.1992). See generally David McKinney, Congressional Intent, The Supreme Court and Conflict Among the Circuits over Statutory Eligibility for Discretionary Relief Under Immigrations and Naturalization Acts 212(c), 26 I. Miami Inter–Am.L.Rev. 97, 120 (1994).

3. Ebank's Criminal History shows a total of 6 arrests; with two felony convictions and one misdemeanor conviction for drug related offenses. (Govt. Exh. 2).

4. On November 12, 1986 Ebank plead guilty to Criminal Possession of a Controlled Substance in the Fifth Degree (Cocaine) in violation of New York State Penal Law. Subsequently, on August 14, 1989 Ebank entered a guilty plea for Crimi-

nal Sale of a Controlled Substance in the Fifth Degree (Cocaine) in violation of New York Penal Law. Consequently, his January 15, 1987 sentence of 6 months with five years probation was revoked. He was resentenced to a maximum term of three years/minimum imprisonment of one year to run concurrently with the September 29, 1989 sentence of a maximum term of four years/minimum imprisonment of two years.

The Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978 (1990) significantly enlarged the category of deportable aliens as a result the expansion of the type of crimes enumerated as aggravated felonies. Among the added offenses are any illicit trafficking in any controlled substance. The enumerated crimes may result from violations of state or federal laws, and is applied retroactively to any crime committed subsequent to November 18, 1988, the effective date of the Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, 102 Stat. 4181 (1988) (Codified at 21 U.S.C. § 1501 (1988)).

offense).... [T]he Attorney General shall not release such felon from custody.

■ The statute contains a bail provision for lawfully admitted aliens involved in deportation proceedings who can demonstrate that they are not a threat to the community and are likely to appear for any scheduled hearings. 8 U.S.C. § 1252(a)(2)(B).[5] The bail provision generally applies only to an alien who, like Ebank, entered the country lawfully but whose presence subsequently became unlawful. Section 1252(a)(2)(B) reads:

> The Attorney General may not release from custody any lawfully admitted alien who has been convicted of an aggravated felony, either before or after a determination of deportability, unless the alien demonstrates to the satisfaction of the Attorney General that such alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings.

■ In most deportation matters, bond is a matter of right.[6] However, aggravated felons, in deportation proceedings, are not automatically entitled to bond. The Eighth Amendment proscribes the setting of excessive bail, but does not provide an absolute right to bail. *U.S. v. Salerno*, 481 U.S. 739, 752–53, 107 S.Ct. 2095, 2104–05, 95 L.Ed.2d 697 (1987). The burden of establishing suitability for release on bond, in keeping with the aforementioned criteria, is on the alien detainee, *Tran v. Caplinger*, 847 F.Supp. 469, 477 (W.D.La.1993); *Matter of Ellis*, Int.Dec. 3197 (B.I.A.1993); *Matter of Eden*, Int.Dec. 3137 (B.I.A.1990). Aliens falling within this group "have an opportunity to overcome the presumption against their release by presenting favorable evidence to an Immigration Judge in an individual bond hearing." *Tran*, 847 F.Supp. at 473.

## II. DISCUSSION

■ Ebank has filed for habeas corpus relief alleging that his continued detention, pending effectuation of his deportation, is in violation of his liberty interest because he has been detained for more than six months following the final order of deportation. The position of the INS is that it has the legal authority to detain Ebank, that the detention is statutorily authorized and does not offend any constitutional protection applicable to him.

Two recent Louisiana district court decisions have a significant impact on this case. In *Tran, supra*, the court held that prolonged and indefinite detention of deportable aliens, who are aggravated felons, is statutorily authorized when immediate deportation is not possible and the alien detainee has not overcome the presumption against release in bond a hearing before an IJ or through appeal to the BIA. The court found that such detention "does not violate the constitutional guarantees of substantive [or] procedural due process, ... or the Eighth Amendment prohibition of excessive bail." *Tran*, 847 F.Supp. at 479. The facts in *Tran* are similar to the facts in the case before this Court: Le Dinh Tran, a permanent resident alien, convicted of an aggravated felony, was afforded bond hearings just as Ebank was, but failed to rebut the presumptions against his release on bond, unlike Ebank who was granted bond hearings and had bond set.

Similarly, the facts in this Court's decision in *Caballero v. Caplinger*, 914 F.Supp. 1374 (E.D.La.1996) bear a strong resemblance to those in the instant case. Rolando Caballero entered the United States illegally in 1984, was convicted of a drug offense—which constituted an aggravated felony—and subsequently was ordered deported to Cuba. The deportation order became final but Cuba refused to accept him. Thus, Caballero filed a petition for a Writ of Habeas Corpus regard-

---

5. The Court notes that this provision was affected by the most recent amendments contained in the Anti Terrorism and Effective Death Penalty Act of 1996, P.L. 104–132, 110 Stat. 1214 (1996). However, those provisions eliminate rights afforded the plaintiff, and the Court will consider the plaintiff's claims under the previously enacted law.

6. Jeffrey Brauwerman and Stephen Mander, IM-MACT 90 Revisions Regarding Immigrations Consequences of Criminal Activity, 66—May Fla. B.J. 28 (1992).

ing the constitutionality of his confinement. This Court held that the indefinite detention of Caballero without a bond hearing violated both Fifth and Eighth Amendment guarantees. Nonetheless, *Caballero* is factually distinguished from the instant case; the most significant distinctions being Caballero's unlawful presence in this country which made him ineligible for the bail provision available to lawfully admitted aliens in 8 U.S.C. § 1252(a)(2)(B). Consequently, Caballero was never afforded the opportunity to overcome the presumptions against his release in an individual bond hearing.

The matter presently before the Court is the antithesis of *Caballero*. This constitutional challenge to indefinite detention by the INS, pending deportation, is brought by an alien who entered the country legally and has been detained under the statute with the benefit of two bond hearings before an IJ. In both hearings the IJ found that Ebank was suitable for release on bond as evidenced in the Notification to Alien of Conditions of Release or Detention signed December 27, 1994, (release under bond in the amount of $20,000) and the Request for Change in Custody Status—Bond Redetermination Hearing granted January 4, 1995 (ordered released from custody under reduced bond of $12,000). (Gov't. Exhs. 6 & 7). Ebank's final order of deportation was entered on January 19, 1996. To date, he has been held in INS custody for approximately 22 months following a final order of deportation.

"The privilege of habeas corpus is assured by constitutional mandate and by generalized statutory directions."[7] Specific statutory provisions recognize the availability of habeas corpus proceedings to: (1) persons denied release on bail in a deportation proceeding, or (2) persons allowed bail regarded as excessive, related to their detention.[8] Therefore, the government's indefinite detention of Ebank resulting from an inability to deport him presents factual circumstances for considering a challenge to his statutory detention pursuant to § 1252. Albeit, the statute does contain a exception for someone in

Ebank's position, the Court must apply the statute as written to the operative facts as presented. The dispositive issue is whether a lawfully admitted alien convicted as an aggravated felon has been extended the protection of the constitutional provisions applicable to similarly situated aliens in deportation proceedings.

At this juncture, the Court incorporates by reference its discussion of the judicial review of immigration legislation, and due process challenge analysis set forth in *Caballero,* 914 F.Supp. 1374, 1376–79, to the instant case. Although the ruling is not directly on point, the analysis is applicable. As summarized in *Caballero:*

> [T]he protections of the Fifth Amendment extend to all persons in this country regardless of the lawfulness of their presence here. *Plyler [v. Doe],* 457 U.S. [202] at 210, 102 S.Ct. [2382] at 2391 [72 L.Ed.2d 786 (1982)]. When balanced against Caballero's liberty interest, § 1252 is an overbroad means of protecting society's interest. An individualized bail hearing will protect society's interest, as well as Caballero's, by presenting an actual opportunity to determine whether he is a flight risk or a danger to society. Thus, the court finds that the statute is an unconstitutional deprivation of Caballero's substantive due process rights. Having concluded that Caballero has a protected liberty interest in seeking his freedom pending deportation, the court also finds that the statute unconstitutionally deprives him of his procedural due process rights because it does not afford him an opportunity to protect his liberty interest.

In striking contrast to Caballero, this Court finds that the procedures utilized by the INS satisfy the constitutional requirements of the Fifth Amendment. Ebank was provided with an individualized bond hearing and custody redetermination. In addition, he was given a favorable bond and afforded an opportunity for release. "The aggravated felon will not be released on bond, unless a lawful permanent resident, who is not a

---

**7.** Gordon and Mailman, *Immigration Law and Procedure,* § 21.04[5] (Desk Ed.1996), 28 U.S.C. § 1291.

**8.** Id.

threat to the community and is likely to appear for any hearings."[9] Therefore, the Courts must defer to the decision of the Attorney General. *Tran,* 847 F.Supp. at 478. "In determining the necessity for and the amount of bond ... it [is] appropriate to consider such factors as stable employment history ... length of residence in the community, ... family ties, ... nonappearance at court proceedings, and previous criminal or immigration law violation." *Id.* Although the record is not clear regarding the factors considered by the IJ, the record does support the decision of the IJ with regard to these factors with regard to the issue whether Ebank had overcome the presumption against his release.

■ This Court has not found any cases which directly address whether the alien detainee who has been determined to be suitable for release on bond, but is financially unable to secure his release, has a constitutional challenge under the Eighth Amendment. However, this Court notes that the discretion of the Attorney General in custody determinations concerning aliens subject to deportation are an important aspect of the Attorney General's discretionary powers. This discretion is not without limitations. As observed in *Tran:*

> Broad as the Attorney General's discretion is, [an] agency may not act arbitrarily or irrationally. It may not proceed at whim, shedding grace unevenly from case to case. It must explain departures from settled policies ... and may not unaccountably disregard on one day consideration it held relevant on another day. *Shin v. INS,* 750 F.2d 122, 125 (D.C.Cir.1984) (citations omitted.)

Merely because Ebank's is financially unable to secure his release on bond presents no unusual factual circumstances for considering an Eighth Amendment challenge to his continued detention. "[B]ail setting is not constitutionally excessive merely because a defendant is financially unable to satisfy the requirements." *U.S. v. McConnell,* 842 F.2d 105, 106 (5th Cir.1988).[10]

■ This Court finds nothing in the record before it that reflects a constitutional violation in the procedures established by the INS for making bond determinations, the hearings before the IJ, or the opportunity for discretionary relief from the District Director with further rights of administrative or judicial review. While the length of petitioner's detention may be of concern, in light of uncertain status of diplomatic talks between the United States and Cuba, with regard to the return of Cuban national from the U.S., it does not violate his Fifth or Eighth Amendment rights. The constitutional provisions applicable to persons accused of a crime do not apply to aliens in deportation proceedings, detention pending deportation may be longer than pre-trial detention without offending traditional concepts of fairness. *Doherty v. Thornburgh,* 750 F.Supp. 131, 139 (S.D.N.Y.1990).

Accordingly, **IT IS ORDERED** that Ebank's petition for Writ of Habeas Corpus challenging the constitutionality of his continued detention pursuant to 8 U.S.C. § 1252 is **DENIED.**

---

9. Id., at § 17.06[4][e].

10. The Court notes that the bond set of $12,000 is not facially unreasonable.